The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons who have any amount of form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw a knight and give their attention. For the court is now sitting, the Aussie and the United States in this honorable court. Good morning. We are pleased to begin with United States v. Beeson.  May it please the court, my name is Kristen Leddy and I appear today on behalf of Appellant Johnny Beeson. I request seven minutes of time for rebuttal. Johnny Beeson stands convicted of possession of contraband in prison in violation of 18 U.S.C. 1791 A2 and B5. This appeal presents the legal question of whether the defendant, while serving a sentence at the Federal Correctional Institute at Morgantown, had fair and sufficient notice that he was subject to a federal criminal prosecution for possessing a prohibited object that threatens the order, discipline, and security of a prison under the contraband statute. This is an important issue for the panel to consider for three reasons. Number one, because a broad interpretation of the contraband statute, as it was at the time of this incident, would permit arbitrary enforcement and prosecution. Two, because it deprives inmates of fair notice as to what items exactly are prohibited under the statute. And three, because there are other individuals who are similarly situated to Mr. Beeson, whose fates depend on the resolution of this case. And the Fourth Circuit should decide in Johnny Beeson's favor, because a person of ordinary intelligence would not know that under the statute, as it was controlling at the time of the incident in this case, that possession of a cell phone would result in a federal criminal charge, rendering the statute void for vagueness as applied to such a person. How could he not know that this was an object that threatened the order, discipline, or security of a prison? I mean, how could you not know that? Just as a matter of common sense, there are so many different ways that this could threaten prison order. That's why they have an administrative code that forbids them, and why these things are confiscated on a fairly regular basis. The BOP is actually required to use monitored systems, approved numbers, and monitored calls, and that is to be able to keep track of communications among inmates, which it could not begin to do. If you go outside that monitored system and have the inmate's own cell phone network. Yes, sir. I mean, how could you not? Well, he admits to an administrative infraction. And prior to this, prior to June of 2010, no other inmate at FCI Morgantown had ever been criminally prosecuted for having a cell phone. Many individuals had received administrative sanctions. Is this a claim of selective prosecution? It's a void for vagueness challenge, Your Honor. Does the fact that Congress changed the law specifically to include cell phones in the inmate list help you in any way? Yes, it does. How? In fact, the Congressional Budget Office, when discussing the cost that would be incurred by the government in changing the statute, said that the addition of cell phones to the contraband statute closes a loophole and allows the government to prosecute other individuals that they otherwise would not likely be able to prosecute. But when Congress is amending a statute to cover a specific instance, that happens all the time. And it happens all the time that they amend it in a more specific direction. But that doesn't begin to concede the vagueness of the prior provision. There is a void for vagueness case that I wanted to discuss, and it is in the Fourth Circuit. In the Third Circuit? Fourth Circuit, sir. The void for vagueness challenge I'm referring to is in the United States v. Chapman. It's a 1976 case where this is the only other void for vagueness challenge that I could locate in the Fourth Circuit for the prison contraband statute. And the prison contraband statute at that point was arguably broader than the one that was in place at the time of this incident and the one that's in place now. Because in that statute, anything whatsoever was verboten at a federal correctional institution. But that's a lot clearer, isn't it? I agree. Anything whatsoever is a lot clearer than trying to guess what threatens the order or discipline. Exactly. But in Congress's wisdom, it decided to change the contraband statute. And at the point in which we're concerned, the contraband statute forbade guns, explosives, currency, and Mr. Beeson was prosecuted under the catch-all provision in the statute, which includes anything, another object, that threatens the order, discipline, or security of a prison or the life, health, and safety of an individual. As a matter of common sense, I'm still not sure how it could be anything other than what the district court found, that possession of these cell phones threatens prison orders. If it was just one way of something and just in one manner, it would be one thing. But in a whole lot of ways, with cell phone communications, you can coordinate assaults of armed guards or other inmates, coordinate deliveries of contraband, coordinate escapes, coordinate retaliation against witnesses, communicate between members of prison gangs as to what retaliation they're going to take against members of another gang, if there's a problem of gangs in the prison. Yes, Your Honor. All of those different things. Initially, in the motion to dismiss that we filed in this case, we did make an argument about the nature of the communication that Mr. Beeson was making at the time that he was caught using a cell phone. And he was making a communication with someone who was on his BOP-approved list. But in our appeal, we decided not to pursue that because it's irrelevant what he was actually using the phone for. What's relevant is that he was chosen out of the 35 to 40 individuals who were also caught with cell phones for criminal prosecution during 2010. There's some indication in the record that the BOP had put the inmates on notice that they would be criminally prosecuted. Is that true or not? I understand that some of the inmates were advised in meetings that they could be punished. But I don't know that Mr. Beeson, in particular, received that notification and punished for something. The fact that something is not permitted or prohibited at a federal institution is of no moment in determining whether that's actually a violation of federal law. I'm a little reluctant to get into whether this is an abuse of prosecutorial discretion. They wanted to wait until they had a strong case, didn't they, where an inmate was actually found in possession, as this one was. Yes, Your Honor. We're talking about a vagueness as applied, not a question of joint possession or whatever. I guess this was sole possession. Where? In its cell? Yes, sir. So some general possession might be okay, having a sole possession in the cell. The previous version of the statute was, of course, passed at a time when cell phone use was unknown or on the far horizon. And now an epidemic of these things in the prison environment. But I don't understand why there wasn't a rational basis for the prosecution. They had a strong case and an epidemic of cell phone use around. I don't understand why they can't apply this statute to this sort of situation. You tie the BOP's hands to an extent if you say that when you have a general provision designed to encourage prison discipline and order, and the BOP would have to wait for a congressional amendment  We've never held that before. Well, there are administrative sanctions that they had been administering to people caught like Beeson with cell phones up until this point. And the statute, as the guards and the BOP were aware, was going to be changed in a matter of three months, in which time they would be able to prosecute anyone for cell phone possession, whether that person was caught. None of this speaks, does it, to the question of whether the cell phone, the only question is whether the cell phone can reasonably be seen as an instrument that in a variety of different ways undermines prison discipline and order. And I don't understand, I mean, if you're talking about things on the outside, firearms, cell phones, they're utterly harmless. But when you get inside of a prison environment, and this is the point our Chapman precedent was making, that there's simply a different set of rules.  When you get into the prison environment, in a variety of practical ways, this facilitates networking and planning and all kinds of coordinated action for a variety of unfortunate ends. And that seemed to me the common sense view that the district court here took. If you wanted to retaliate against another inmate for an incident in the prison cafeteria, the way you would do it is talk with some other members of the prison population and coordinate the time and coordinate the place. Somebody disses another inmate, people take those dignitary assaults very seriously, and what do they do? They get some of their buddies and make sure that somebody is served notice. Sometimes in a very brutal sense. And the timing of the attack and who's going to be involved in it and how it's going to be carried out, cell phones are instrumental in that kind of planning. That may be true, but there's also whether or not Mr. Beeson knew that he was violating a federal statute as opposed to an administrative statute. Whether a reasonable person would know, not Mr. Beeson. Well, a person of ordinary intelligence. See how a reasonable person would come to another conclusion. Anyway, you've got some rebuttal time. Thank you. Thank you. Mr. Flau. May it please the Court, Your Honors. I think what's important, and the Court's already touched on this already, is the policy determination that the Chapman Court discussed. Although the statutes have been changed since 1976 when that case was argued and that order came out. I'm proposing counsels the point that you can go through, you can go at all this with an administrative sanction and with the BOP administrative code that you really don't need the statute. Of course, Congress probably felt you did need the statute when it amended it. But the question is, why do you need the statute? Your Honor, that's a question you can ask with any kind of disciplinary infraction that occurs in a prison setting from the most serious offense that could occur would be a killing that inmates are disciplined for, all the way down to some sort of soft contraband that is possessed. The reason, and specifically in this case, and the record lays this out, is there had become an epidemic of cell phones being found at FCI Morgantown. The record indicated 35 to 40 cell phones just in the year prior to Mr. Beeson being caught in possession of the cell phone. In a facility such as FCI Morgantown, there is very minimal security. It's a five-foot perimeter fence, chain-link fence. There's no barbed wire. There's no armed guard patrol. And really, there are gaps in the fence where inmates can get access to the outside very easily and others can get access in. Contraband is a problem, specifically things like cell phones. And in this case, the prison decided they needed to do more than just administrative sanctions where an inmate may get thrown in the special housing unit for a period of time, lose some good time. Criminal prosecution would be the next step in terms of a deterrent. Do you agree that the fair notice of what is illegal must come from the face of the statute? I think in looking at this, Your Honor, I would agree with that. If we're looking at a criminal statute... Do you think on its face that this statute would prohibit the possession of powdered coffee creamer? I'm not sure that that's something that would be prosecuted, Your Honor. I'm asking you whether or not you believe it would be prohibited, or would you have to guess? Powdered coffee creamer? No, Your Honor. I don't think that's something that necessarily would be prohibited. Well, it is prohibited in many prisons because you can make a flamethrower out of it. How about a hand towel that you could choke someone with or make nunchucks out of a table or chair legs? There are innumerable things that creative inmates can do to threaten the order and discipline and security of a prison, and are we left to guess from this statute as to the way it's written at the time this offense is alleged to have occurred? Yes, Your Honor. Are we just to use our common sense and say, well, I think so, somebody else might not? Or are we to use the objective standard of the ordinarily reasonable person, as Judge Wilkinson said? Your Honor, that is the standard, the reasonable person standard. But I think a common sense determination goes into that. What an ordinary person, through their common sense, would think would be something that threatens the security order and discipline of an institution. Chapman specifically held that it would almost be impossible to catalog every single item that could potentially threaten the security and order discipline of an institution. But they could have, in the statute, as they do in many statutes, they could have referenced prison regulations or put in there some provision in the statute so that we would look to prison regulations or we would look to the institution's rules. But there's no delegation on the face of this statute, is there? Not the current version of 1791, Your Honor. No, not at this time. Most prisons have a list of what is contemplated. Was there such a list in Morgantown? Your Honor, off the top of my head, I don't recall in the policy that was provided or the handbook provided to the inmates, which is an exhibit that was in the Joint Appendix, if there is a list in that or if it would have been something separate. But one thing that I think is important in this, when you talk about a list of contraband and you go back to what the disciplinary procedures could have called for, in this case, what Mr. Beeson could have been charged with was a violation of a Code 108. And he acknowledged that he could be disciplined for a Code 108, which is a violation of possessing a hazardous tool, possessing or creating, manufacturing a hazardous tool. Is it your argument that anything that the warden or prison officials determine is prohibited is a felony under this statute? No, Your Honor. Actually, a cell phone possession is only a misdemeanor, even under the current version of the statute. Is it a crime? Is it a crime separate from the administrative procedures available for discipline in the prison? Is it your position that if they put it on the list, then by definition it threatens the order and discipline in the prison and therefore becomes a misdemeanor or a crime under this statute?  Why not? Under your argument, I don't see why it wouldn't. Well, there are some items. I think the prison, for the most part, tries to make a distinction between what they call hard contraband and soft contraband. Does this statute make that clear? I mean, if I violate a rule with regard to contraband, aren't I by definition undermining the order of the place? Look, you don't need to go into all these hypotheticals. You're talking about a specific use, cell phone use. And you're talking about a provision. Come on, get with it on these answers. You're talking about a provision that has to mean something. The flip side of it is you can't just read the provision out of the statute by saying, well, nothing that a warden feels is dangerous can fall under the prescription in the statute. And your argument is, as I understand it, not one with respect to hand towels, but with respect to a device that is almost uniquely instrumental in coordinating a variety of prison actions that because they are collective, which a hand towel isn't an instrument of collective action, or only rarely, but because of the unique properties of a cell phone in coordinating collective action, that surely would fall within the heart of this omnibus provision, which cannot be read to mean nothing. And I don't understand why you're not giving those answers directly and quickly to what are good questions. Yes, Your Honor. If you look at, if you take that provision, the catch-all provision, and you read it essentially the way that the appellant... These are good questions, and you have a response. Yes, Your Honor. But you've got to respond directly to them. My response would be, if you read it the way that the appellant argues it, any item that is not specifically enumerated in the statute could never be prosecuted. You would never be able to find a specific item. When you're talking about cell phones in particular, these carry great concerns in the prison. They bypass the monitored telephone system that the BOP has set up. Where do we draw the line? If you possess a book of matches, a lighter, they have potential to threaten the order and discipline. They do, Your Honor. Prisoners are known for setting fires to mattresses and things like that. Would that fall within this criminal statute as well? Yes, I think those definitely would, Your Honor. How about a Snickers bar? A Snickers bar, Your Honor? That, Your Honor, would fall under soft contraband. And I'm not sure. I don't think a Snickers bar would be something that would be prosecuted. They melt them down and they use them as weapons to burn people. What I'm worried about is I'm left to guess. Isn't that the problem? You yourself keep using the term catch-all. Isn't that the real problem with vagueness? Is it a catch-all? And I don't know what we're catching. We're looking specifically, Your Honor, in the context of a prison setting. And actually all of these items that you're talking about are things that can be used. If you said a Snickers bar, that can be melted down. There are a lot of items, for instance, plastic bags that inmates take. They melt these down. They forge them and shape them into stabbing weapons. They become essentially knives. They can make shanks out of toilet paper. They make shanks out of all kinds of different items, Your Honor. You're correct. So do we ban toilet paper and cellophane or plastic bags under this criminal statute? Not. I don't think in every context those are going to be something that is prohibited. In fact, these are items that are found in the prison and that inmates are permitted to have. Can you make a distinction that might suit you to call something a soft contraband as opposed to a hard contraband? How am I supposed to know what's soft and what's hard? I think we're looking at the point that contraband may be found. And at that point, is that an item that can be used to threaten the order, security, discipline of the facility or endanger the health, life, and safety of an individual? The plastic bag, if it's just a plastic bag and it's in an inmate's locker and it's holding items just to that effect, that's not something that the BOPs... A cell phone is turned off and sitting in the prison cell doesn't do anything either. But a cell phone is different, I think, from those other kinds of items. Well, isn't that your best argument? Isn't that what Judge Wilkinson suggests, that a cell phone is so obviously... Fundamentally, Your Honor. In a prison context, a cell phone causes significant threats. And it's not just necessarily the collective action that one inmate can make with another person to set up... It's possible to write an opinion very narrowly because I happen to think that some of the concerns that Judge Goodwin is expressing and Judge Ford, I think they're well-founded. You don't want this to cover everything under the sun. And a court can make clear, you know, you can't just take this and ride out on the wide-open prairie. But your case has to be that the provision, the catch-all provision, has to mean something. And it's not written in terms of just contraband. And what you're saying is that because of the potential within a confined setting of producing a variety of coordinated inmate actions, that those things are different in kind from a towel or a plastic bag or a Snickers bar or what have you because of this communicative potential. Yes. And when you look at this catch-all provision, as Chapman said, you can't catalog everything that is potentially going to threaten... Isn't that the problem? If you keep going back to that argument that you can't catalog everything, it means that on its face you can't tell what's prohibited. No, I think what this... I mean, aren't you undermining your own argument with that? No, when you look at cell phones specifically, as I think Judge Wilkinson pointed out, this is something that's more of a recent technological innovation. Thirty years ago, this wasn't something that would have even been considered as a possible item that could threaten a prison. But your position is it can't mean everything, but it must mean something. Yes. And there's a zone between meaning everything and not meaning anything. And what you're saying is that given those BOP regulations, given the fact that the inmates work under a monitored system, given the fact that cell phones are being confiscated in the prison, given the fact that they're a communicative device, all of these things would put it into the core of the statute. Yes. And it would do so without any need to have a thing sprawling over a large variety of dubious applications. That's true, Your Honor. I mean, we're specifically dealing with cell phones in this case. I take it that we would apply it the same if you had an iPad. Yes, Your Honor. An iPad is similar to a cell phone, although you may not be able to make a phone call on it. There are other uses of an iPad, FaceTime, e-mailing, Facebook, texting. I mean, there's all kinds of communicated avenues that you can use with an iPad and an electronic device. It's the fact that it's very efficient at it, because I can communicate with somebody with a shiny object sending Morse code signals out through the fence. I mean, I can communicate from a distance, but it's the efficiency of the cell phone or the electronic communication to do the things that Judge Wilkinson has cataloged that would make you say that if the ordinary person is on notice, on fair notice, that a cell phone is prohibited. Yes.  Yes, it's unmonitored. That's a narrow argument, isn't it? Because Judge Goodwin's questions concern me. I don't want this statute as broad as all outdoors. And the argument you're making is a very narrow and a very explicit argument about the unique properties of a particular device.  This case, Your Honor, I would agree, is focused on a cell phone. We're not looking at this statute in general. And the concern specifically that Judge Goodwin raises is that it's unmonitored. These communications, however they're conducted on a cell phone or an iPad, are unmonitored. And that raises significant concerns for the security and order of the facility. There is no debate that it's a good idea to ban cell phones. The question is whether or not it's on fair notice from this statute that they're banned. I think it's instructive, the fact that there's a lack of cases that have challenges. I think it shows that there is a discretion that the BOP and the government has used in applying this statute. How many prosecutions have they made for cell phones before they amended it to include them? In the Northern District of West Virginia? No, in any. There have been. I can't give you the exact number, but I know specifically in the Southern District of West Virginia there were two that the government included with its response in this case before the district court. There were at least two there. There are other opinions, published, unpublished opinions, that discuss the fact that a cell phone charge was included. The Southern District of West Virginia. What judge wrote those, do you know? Those were misdemeanor information filed before a magistrate judge, I believe it's Vandervoort. And those weren't challenged. The inmates just pled guilty to possessing a cell phone. And I think those, I'm not sure if they were binding, but they were worked out plea agreements, there were no appeals, there was no issue raised as to vagueness or anything whatsoever in that matter. But do you know of any case that's been decided where this has been challenged in the country? Just the unpublished Third Circuit decision in the United States v. Blake. Which went your way? That is right, it was a two-to-one decision in favor of the government, Your Honor. Essentially saying that common sense would dictate that a cell phone is an item that causes concerns to the security in our district for the reasons we've talked about. The possibilities of the things that can be done with a cell phone by inmates in arranging illegal, illicit activities. Thank you very much, Your Honor. I'd be happy to hear from you in rebuttal. Thank you. Just briefly, Your Honors. As Mr. Flower mentioned, very, very few people have been prosecuted for this offense. And there is a cogent dissent to Blake which discusses why prosecuting someone under the statute is unconstitutional. In your position, were you creating a circuit split? You would be the only circuit, if you were to publish an opinion, who would be announcing a decision. How about the Third Circuit? It's unpublished, sir. It's unpublished. Yes, Your Honor. Would there still be a circuit split? You say there can't be a circuit split with an unpublished opinion? Not to my knowledge. If you were publishing, that would be of precedential value for us. And I don't know that that would create a circuit split. That may be beyond my ken, Your Honor. Even though the two circuits went different ways, there's no circuit split? Well, it would depend on whether or not someone else could be prosecuted under the statute, wouldn't it? Is it possible? There may be additional... Would you concede that there are some objects that are so obvious to the ordinary person, in terms of their ability to threaten the order, discipline, and security of a prison, that they are covered by this statute? Or do you say that this provision is so broad that nothing would occur to the ordinary person? I would say that Congress determined that, yes, cell phones are dangerous enough to be named specifically in the prison contract. No, no, no. I mean under the statute as it existed at the time. When you're arguing void for vagueness, you're arguing that it's void as to all objects. So I think that's what you're arguing. Yes, and I would respond that he has admitted to an administrative sanction that he... But we have to give the provision some meaning. Congress passed a provision. We cannot say that the provision has no meaning, and that essentially nothing is covered, because if these cell phones are not covered, I really am not sure exactly what would be. And we have to give some effect to what Congress has done. And if you can't give effect to something that coordinates inmate action within a restrictive environment, and if we were to put aside the fact, why does the BOP monitor calls? Precisely because it's concerned about unmonitored calls threatening the order and discipline of the prison, and that's why it monitors the calls. And the inmates know those calls are monitored. They're not naive. And they want an unmonitored system. And there's a reason that the calls are monitored. There's a reason Congress passed the statute. This is right at the core of Congress's reason for acting. We'd almost be declaring the statute to be of no real effect. That's what you're asking us to do, right? You're saying it's void for vagueness. You're asking us to declare that it is of no effect. The so-called, as the government refers to it, catch-all provision. Because it catches all. There are administrative sanctions in addition to that could punish it. Aren't you agreeing with me? I think you're agreeing with me. Yes, I am. If you're not, you're in trouble. Yes, I am. Thank you. Thank you. We appreciate it, and we will come down and greet counsel to the next case.
judges: J. Harvie Wilkinson III, Henry F. Floyd, Joseph R. Goodwin